IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 31505-3-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WILLIAM JOSEPH CANTRELL, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

BROWN, J. — William Joseph Cantrell appeals his two convictions for unlawfully possessing a controlled substance. He contends his defense counsel was ineffective for failing to request an unwitting possession instruction. We disagree. Additionally, Mr. Cantrell points out a conceded, but moot, scrivener's error describing a revoked sentencing alternative in an earlier judgment and sentence. Accordingly, we affirm.

FACTS

On August 10, 2012, Kennewick police officers were looking for a red Dodge Durango SUV in connection with a shoplift report. They found the Durango in a store parking lot and arrested the passengers, Cindy McCready, her daughter Kristy McCready, and Shawn Charpentier. Officers found and arrested the Durango owner and driver, Mr. Cantrell, in a nearby store. Officers legally searched the Durango,

finding heroin and methamphetamine and suspected stolen property. The State charged Mr. Cantrell with possessing the two controlled substances.

At trial, Detective Damon Jansen related he found two shaving kits in the rear storage area of the Durango among other items. One shaving kit contained Mr. Cantrell's social services card and a prescription bottle and related explanation sheet showing Mr. Cantrell's name. The other shaving kit contained a syringe with heroin, a scale, used cotton swabs, and white crystals that tested positive for methamphetamine.

The State played portions of two telephone calls Mr. Cantrell made from the jail to his girl friend, Kristy McCready, after his arrest. The first call partly included:

> [Mr. Cantrell]: Did you get charged –
> [Ms. McCready]: No.
> [Mr. Cantrell]: You didn't?
> [Ms. McCready]: No.
> [Mr. Cantrell]: (inaudible) stuff was yours.[1]
> [Ms. McCready]: Yeah. . . . [T]hat's what I want to say in the letter is that I want to know if you want me to take the charges—and say that the shit was mine.
> [Mr. Cantrell]: We'll wait and see on the 7th.

Report of Proceedings (RP) at 98-99; Ex. 34, Part A.

In the second call, Mr. Cantrell partly stated, "[t]here was some dope in the vehicle too . . . [b]ut it was in the back . . . [j]ust like a couple—a gram or something. But it was within Shawn's reach. So that could be anybody." Ex. 34 at 134.

---

[1] On the audiotape the full sentence can be heard as follows: "'Say that stuff is yours.'" RP at 154.

2

Mr. Cantrell testified and denied that he had any knowledge of the shaving kit drugs and suggested Mr. Charpentier could be responsible for those drugs. Mr. Cantrell admitted he owned the Durango and had driven it to the store parking lot before he was arrested. He testified that day Kristy McCready was in the front passenger seat, Mr. Charpentier was in back driver's side seat, and Cindy McCready was in the back passenger side seat. He addressed the jail telephone calls to his girl friend, explaining that in the first conversation he was referencing stolen property, not drugs. As to the second call, he explained, "I was thinkin' I was getting charged for two grams I may have hid in the vehicle, which was never found." RP at 135. He continued, "I wasn't sure what drugs they were talkin' about. I'm thinkin' I might have hid two grams in it. You know, I got two different vehicles. You know, maybe I hid two grams in my other vehicle." RP at 156.

Mr. Cantrell admitted crimes of dishonesty, his drug use, and that he had used drugs on the day in question with the McCreadys. During cross-examination, Mr. Cantrell admitted he had lied to the police about who was driving the Durango on the day in question. He admitted he would have been willing for his girl friend to take the blame for the property in the back of his car, stating it would have been easier for her to take the blame because she had no criminal history.

Before jury instruction, Mr. Cantrell's attorney discussed the potential use of an unwitting possession instruction in Mr. Cantrell's defense, but ultimately did not request that instruction. During closing argument, Mr. Cantrell tried to refute the State's case for

3

constructive possession. He emphasized the Durango passengers could have possessed the illegal drugs, arguing, "there's at least three reasonable reasons for doubt. In this case, they all have names. Kristy McCready, known drug user. Cindy McCready, known drug user. Shawn Charpentier, known drug user. They're all in this vehicle." RP at 184. He also argued that even though he owned the Durango, he did not have dominion and control over the drugs in the back of the car because he did not have "actual or immediate ability to take actual possession of the substance," pointing out that he "would have to actually get out of the car or crawl through to the backseat or go around to the back and open up the tailgate to get at these drugs." RP at 185.

A jury found Mr. Cantrell guilty as charged. The court imposed a residential drug offender sentencing alternative (DOSA), chapter 9.94A RCW, but mistakenly showed that to be prison based. The DOSA was later revoked for Mr. Cantrell's noncompliance and the court imposed a 24-month standard range prison sentence in a revised judgment and sentence.

## ANALYSIS

### A. Ineffective Assistance Claim Fails

The issue is whether Mr. Cantrell's trial counsel was ineffective for failing to request an unwitting possession instruction. Mr. Cantrell contends the evidence supported giving that instruction because he testified he did not know he possessed the drugs. He argues his counsel misunderstood the unwitting possession defense and therefore, the failure to request the instruction was not tactical and was prejudicial.

4

The Sixth Amendment to the United States Constitution declares the right to assistance of counsel in criminal prosecutions. The Washington Constitution grants an accused, in a criminal prosecution, the right to counsel. CONST. art. I, § 22. To effectuate the purpose behind the constitutional provisions, the accused is entitled to "effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

We review ineffective assistance of counsel claims de novo. *In re Pers. Restraint of Brett*, 142 Wn.2d 868, 873, 16 P.3d 601 (2001). To prove ineffective assistance, a defendant must show (1) counsel's performance was deficient and (2) the deficiency resulted in prejudice. *State v. Hendrickson*, 129 Wn.2d 61, 77-78, 917 P.2d 563 (1996). We strongly presume defense counsel's performance was not deficient. *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004). To rebut this presumption, a defendant must show but for the deficient performance, the outcome of the trial would have been different by a reasonable probability. *Hendrickson*, 129 Wn.2d at 78; *State v. Thomas*, 109 Wn.2d 222, 226, 743 P.2d 816 (1987). A failure to satisfy either prong is fatal to an ineffective assistance of counsel claim. *Hendrickson*, 129 Wn.2d at 77-78.

To convict Mr. Cantrell of the unlawful possession charges, the State had to prove beyond a reasonable doubt that he possessed the heroin and methamphetamine without authorization. RCW 69.50.4013(1). Possession may be actual or constructive. *State v. Staley*, 123 Wn.2d 794, 798, 872 P.2d 502 (1994). Guilty knowledge and intent are not elements of the crime. *State v. Cleppe*, 96 Wn.2d 373, 379-80, 635 P.2d 435

5

(1981). To ameliorate the harshness of the crime's strict liability nature, a defendant may assert the affirmative defense of unwitting possession. *State v. Bradshaw*, 152 Wn.2d 528, 538, 98 P.3d 1190 (2004). This defense assumes the State has established a prima facie defense showing "possession" and requires the defendant to prove, by a preponderance of the evidence, either that he did not know he was in possession of the controlled substance or that he did not know the nature of the substance he possessed. *Staley*, 123 Wn.2d at 799-800. The pattern jury instruction on unwitting possession provides:

> A person is guilty of possession of a controlled substance if the possession is unwitting. Possession of a controlled substance is unwitting if a person [did not know that the substance was in [his] [her] possession] [or] [did not know the nature of the substance].
> The burden is on the defendant to prove by a preponderance of the evidence that the substance was possessed unwittingly. Preponderance of the evidence means that you must be persuaded, considering all of the evidence in the case, that it is more probably true than not true.

11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 52.01 (3d ed. 2008).

During trial, defense counsel questioned whether an unwitting possession instruction was appropriate:

> The only question I have is whether or not the unwitting possession would be an appropriate instruction to give because I think this wasn't something actually found on my client's person, so it's not an unwitting case.
> The State is charging this or alleging the possession based on constructive possession. Since it was found in the vehicle, they're saying that he had dominion and control over. So, I don't think the unwitting instruction would be appropriate.

6

RP at 118-19. Ultimately, Mr. Cantrell did not request an unwitting possession instruction.

Failure to request an instruction on a potential defense can constitute ineffective assistance of counsel. *In re Pers. Restraint of Hubert*, 138 Wn. App. 924, 929, 158 P.3d 1282 (2007). To prevail on a claim of ineffective assistance based on counsel's failure to propose a jury instruction, Mr. Cantrell must show (1) defense counsel's failure to request the instruction was not a legitimate tactical decision and (2) had counsel requested the instruction, the trial court likely would have given it. *State v. Powell*, 150 Wn. App. 139, 154-55, 206 P.3d 703 (2009). The first requirement is addressed here.

Citing *State v. George*, 146 Wn. App. 906, 193 P.3d 693 (2008), Mr. Cantrell argues defense counsel's decision to not request an unwitting possession instruction was not tactical because it was based on an misunderstanding of the law specifically, that defense counsel did not understand the unwitting possession defense applies in constructive possession cases. Mr. Cantrell's reliance on *George* is misplaced. Unlike our case, the defendant in *George* was a passenger in the backseat of a car owned by another person. *George*, 146 Wn. App. at 912. A police officer found a pipe with marijuana on the floorboard behind the driver's seat, next to where the defendant had been sitting. *Id.* at 913. The defendant denied owning the pipe and asked for an unwitting possession instruction, which the trial court denied because the defendant did not testify. *Id.* Division One of this court reversed the conviction, finding "a wealth of evidence" justified giving the instruction to the jury, including evidence showing

7

defendant denied any knowledge of the pipe and was not the driver or owner of the car. *Id.* at 915. Thus, in contrast to this case, ample evidence supported giving the instruction.

Here, defense counsel's decision not to request an unwitting possession instruction was a legitimate trial tactic. Although it appears defense counsel misarticulated the unwitting possession defense, he had objectively reasonable concerns about the burden of proof. Defense counsel was faced with difficult choices, either admitting knowledge of the presence of the drugs or advancing the theory that one of the passengers possessed the drugs without his knowledge. Denying knowledge held the State to its burden of proving his constructive possession. In view of Mr. Cantrell's admission in a jail telephone call that he was aware of the drugs in his car, proving unwitting possession would have been difficult. By not offering the unwitting possession instruction, defense counsel was able to argue Mr. Cantrell did not have dominion and control over the drugs found in his car, and point to the three passengers as possible possessors of the drugs. This decision to hold the State to its burden of proving constructive possession was objectively reasonable and not deficient. A failed trial strategy is immaterial in evaluating whether trial counsel's performance was deficient. *State v. Grieg*, 171 Wn.2d 17, 42, 246 P.3d 1260 (2011).

Even if defense counsel was deficient in failing to seek an instruction on unwitting possession, this deficiency did not result in the necessary prejudice. Strong evidence showed Mr. Cantrell exercised dominion and control over the car and the two drugs

found there. He was the driver and owner of the car. Other items in the back of his car belonged to him. Even if the jury had been instructed on unwitting possession, no reasonable probability exists that the jury would have found him not guilty. In a jail telephone call, he admitted there were drugs in the back of his car and identified who he could blame for possessing them. He admitted he encouraged Ms. McCready to take the blame for another offense, and lay blame on Mr. Charpentier for all crimes. Mr. Cantrell's impeached statements and impaired credibility undermined his claims he did not know that controlled substances were in the back of his car. Given this record, no reasonable probability exists that an instruction on unwitting possession would have changed the trial's result. Therefore, we conclude Mr. Cantrell was not denied effective assistance of counsel.

## B. Scrivener's Error is Moot

Mr. Cantrell asks us to remand the March 6, 2013, judgment and sentence for correction of a conceded scrivener's error listing 12 months of community custody under a prison-based DOSA section rather than a residential-based DOSA. He asks us to strike that portion of the sentence. But the court later revoked Mr. Cantrell's residential DOSA and entered a new judgment and sentence with a 24-month standard range prison sentence after he failed to comply with the conditions of the DOSA. Thus, Mr. Cantrell's request that we strike the 12-month community custody provision in the initial judgment and sentence is moot.

9

No. 31505-3-III
*State v. Cantrell*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

Brown, J.
_____
Brown, J.

WE CONCUR:

Siddoway, C.J.
_____
Siddoway, C.J.

Korsmo, J.
_____
Korsmo, J.